NATIONAL BANKERS LIFE INSURANCE COMPANY *v.* CABLER

No. 40264 November 5, 1956 90 So. 2d 201

*Watkins & Buckley,* Meridian, for appellant.

*Thos. K. Holyfield,* Meridian, for appellee.

KYLE, J.

Chester F. Cabler, as complainant filed suit in the Chancery Court of Lauderdale County against the National Bankers Life Insurance Company, a corporation, as defendant, seeking to recover hospital and medical expenses alleged to have been incurred by the complainant for the care and treatment of a rectal disorder during the period from March 4, 1955, to May 26, 1955, and for the payment of which the complainant alleged that

the defendant was liable under a health and accident insurance policy issued to the complainant during the year 1953, a copy of which was attached to the bill of complaint.

The defendant filed a general demurrer to the bill of complaint, which was overruled, and from the decree overruling the demurrer the defendant has prosecuted this appeal.

The complainant alleged in his bill that the policy of insurance had been issued to him on April 14, 1953, and that the policy was in full force and effect at the time the hospital and medical expenses sought to be recovered were incurred. The complainant further alleged that he had been hospitalized in March and April 1954 on account of a disease or disorder of the rectum, and that he had filed a claim under the policy for the expenses incurred at that time, which the defendant had paid; that the policy came up for renewal on July 14, 1954, and a few days before the renewal date, the defendant wrote the complainant a letter advising him that the defendant's membership committee had agreed to a renewal of the policy only on the condition that the complainant would sign a waiver, which was to be attached to the policy as a supplement forming a part of the policy, agreeing "to waive any claim for indemnity on account of any loss or disability hereafter sustained which shall be caused or contributed to by any ailment, disease or disorder of the rectum or peri-rectal tissues." The complainant further alleged that on or about July 12, 1954, he forwarded to the defendant a money order for the quarterly premium about to become due for the next three months period, but the money order was returned to him a few days later with a letter stating that the premium could not be accepted because of his failure to sign the waiver, and in that letter he was advised that the signed waiver and a remittance of $10.50 should be forwarded to the home office on or before August 13, to prevent a lapse of the policy; and that he replied to that letter on August 2,

1954, and in his letter of that date stated that the reason that he had not signed the waiver was that he was still under the doctor's care, and that, if and when the doctor released him, he would waive any future claims on that particular ailment.

The complainant further alleged in his bill that the defendant wrote the complainant another letter on August 10, 1954, in which the defendant acknowledged that it was liable to the complainant for benefits under the policy for an illness originating during the period for which the defendant had already accepted premiums, and thereby induced the complainant to sign the waiver, "which is in the possession of defendant," and to pay additional premiums to the defendant; that the complainant relied on the representation of the defendant that he would be covered under the terms of the policy for any illness originating during a period for which premiums had been accepted, and that he would be covered for the illness complained of, inasmuch as it had originated during a period for which premiums had been paid. The complainant further alleged that because of the above mentioned illness which had begun on or about March 20, 1954, it had become necessary for him to obtain additional medical treatment and hospitalization during the period beginning March 4, 1955, and ending May 26, 1955; that the medical and hospital expenses incurred amounted to $976.90; and that he was entitled to reimbursement under the policy in the amount of $700.90.

The complainant attached to his bill of complaint copies of the letters mentioned above, and also a copy of the waiver dated July 14, 1954, which he had signed and returned to the defendant prior to the expiration of the thirty days grace period allowed under the terms of the policy.

In its general demurrer to the bill of complaint, the defendant alleged that there was no equity on the face of the bill. The defendant also filed an answer, in which

it admitted that the policy was issued on April 14, 1953, but denied that the policy in its original form was in full force and effect at the time the above mentioned medical and hospital expenses were incurred. The defendant averred that the policy had been modified and changed by the waiver dated July 14, 1954, which had been signed by the complainant prior to the defendant's acceptance of the renewal premium of that date; and the defendant denied that it was liable for any part of the medical and hospital expenses incurred on account of the recurrence of the rectal disorders in 1955. The defendant admitted that the letters referred to in the bill of complaint had been written and received by the respective parties, but denied that the defendant's letter of August 10, 1954, was misleading or had any different meaning from that which was expressed; and the defendant denied that it had made any representation to the complainant that any recurrence of the rectal ailment in the future would be covered by the policy.

The chancellor overruled the general demurrer, and granted an appeal to settle the controlling principles of law.

 The only error assigned or argued on this appeal is that the court erred in overruling the appellant's demurrer to the bill of complaint. It is argued on behalf of the appellant that the policy was a term policy renewable only at the option of the company; that the bill of complaint shows that the appellant declined to renew the policy on July 14, 1954, unless the appellee agreed to waive all future benefits arising by virtue of hospitalization for rectal disorders; that the appellee agreed to the condition stated and signed the waiver, and the claim sued on is specifically barred by the terms of the waiver. The appellee, in answer to that contention, says that the statements contained in the appellant's letter of August 10, 1954, were in effect representations that the appellant would continue to be liable for hospital and surgical

expenses incurred thereafter for any illness originating prior to the date of the execution of the waiver, and that the appellant is estopped by the representations made in that letter to claim that the hospitalization required from March 4, 1955, to May 26, 1955, was not covered under the terms of the policy.

It seems clear to us from the allegations of the bill that the waiver dated July 14, 1954, was intended to eliminate any claim for indemnity for hospital and surgical expenditures incurred after that date on account of any ailment, disease or disorder of the rectum.

The policy sued on is not a life term policy. It is a term contract, providing indemnity "for losses as specified in the schedule coverage, caused by accidental bodily injuries or by sickness." The only coverage for which premiums were paid was coverage for hospital and surgical expenses. The renewal quarterly premium was $10.50. The policy shows on its face that it became effective April 14, 1953, and that the initial term expired July 14, 1953. The policy recites in bold type that is is renewable at the option of the company only. The coverage for which premiums were paid did not include sickness or accident benefits other than indemnity for hospital and surgical expenditures incurred during the period for which premiums had been paid. The waiver dated July 14, 1954, excluded coverage for hospital or surgical expenses incurred after that date on account of any ailment, disease, or disorder of the rectum. The expenses involved in this litigation were incurred for hospital and surgical care on account of disorder of the rectum after the waiver had been placed on the policy. These facts were fully shown by the bill of complaint and the exhibits attached thereto.

We do not think that the letter of August 10, 1954, had the effect of modifying in any manner the terms of the proposed waiver, which the complainant had before him at the time he received that letter. The letter merely

stated: "The signing of the waiver which we forwarded to you June 28, 1954, would have no bearing on a claim due you during the period of time you were hospitalized before the waiver was placed on your policy. We are enclosing claim blanks which should be fully completed by you and your physician and returned to this office for the consideration of the Claim Department, if you wish to file an additional claim for an illness which originated during the period for which we have accepted premiums." The only kind of additional claim that could have been properly filed at that time was an additional claim for hospitalization expenses incurred during the period for which the company had accepted premiums, and that period had ended July 14, 1954. There is nothing in the letter to justify the appellee's belief that, even though he signed the waiver, he would still be entitled to recover medical or hospital expenses incurred thereafter on account of an ailment, disease or disorder of the rectum.

In reaching the decision that we have reached in this case, we are not unmindful of the well established rule that insurance contracts are to be construed most strongly in favor of the assured, and that where the terms of an insurance policy are ambiguous, equivocal or uncertain to the extent that the intention of the parties is not clear and cannot be ascertained clearly by the application of the ordinary rules of construction, then it is to be construed most strongly against the insurer. Farmers Mutual Insurance Association v. Martin, 226 Miss. 515, 84 So. 2d 688, and cases cited. See also Williams v. Reserve Life Insurance Co., 223 Miss. 698, 78 So. 2d 794. It is equally important, however, that we keep in mind also the long established rule that if the insurance contract is plain and unambiguous, it should be construed as written and like any other contract. Griffin v. Maryland Casualty Co., 213 Miss. 624, 57 So. 2d 486; Continental Casualty Co. v. Hall, 118 Miss. 871, 80 So. 335; Georgia Casualty Co. v. Cotton Mills Products Co., 159 Miss. 396, 132 So. 73;

Brotherhood of Railroad Trainmen v. Bridges, 164 Miss. 356, 144 So. 554; Farmers Mutual Insurance Association v. Martin, supra.

 We think the contract of coverage in this case is plain and unambiguous. The contract of coverage consists of the policy itself, and the waiver which the appellee signed prior to the appellant's acceptance of the renewal premiums that became due July 14, 1954. By the terms of the waiver the expenditures sought to be recovered in the bill of complaint are expressly excluded from the policy coverage.

The demurrer to the bill of complaint should have been sustained.

The decree of the lower court overruling the demurrer is therefore reversed, and the cause is remanded.

Rversed and remanded.

*McGehee, C. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.