258 So.2d 798 (1972)
INSURANCE COMPANY OF NORTH AMERICA
v.
DEPOSIT GUARANTY NATIONAL BANK, Exec. of Will & Estate of John Baxter Burns, Jr., Deceased.
No. 46551.
Supreme Court of Mississippi.
February 28, 1972.
Watkins & Eager, Elizabeth Hulen, H.H. Whitworth, Jackson, for appellant.
Carter, Mitchell & Robinson, Jackson, for appellee.
*799 RODGERS, Presiding Justice.
The appellee Deposit Guaranty National Bank, Executor of the will and estate of John Baxter Burns, deceased, filed an original bill in the Chancery Court of Hinds County, Mississippi, against the Insurance Company of North America upon a health policy issued by the insurance company. The Bank sought to recover medical benefits alleged to be due under the terms of the policy. The insurance company filed a demurrer to the original bill, and when the Chancellor overruled the demurrer, the insurance company refused to plead further. A judgment for the sum of one thousand nine hundred fifteen dollars and seventy-five cents ($1,915.75) was accordingly rendered against the insurance company.
The bill filed in the Chancery Court alleged that the insurance company issued a health and accident policy to John Baxter Burns, Jr., by which the insurance company agreed to pay seventy-five percent (75%) of the medical expenses incurred by the insured over and above five hundred dollars ($500.00), not to exceed seventy-five hundred dollars ($7,500.00) as a result of any one sickness.
It was further alleged that on February 5, 1967, the insured, John Baxter Burns, Jr., experienced a heart attack and that on February 23, 1967 his medical expenses had exceeded the deductible amount of five hundred dollars ($500.00) set out in the policy. The insurance company had, however, paid seventy-five percent (75%) of the medical expenses above the deductible amount for the period between February 23, 1967 and February 23, 1969.
It is then alleged in the original bill that the insured had a recurrence of his sickness on November 11, 1969, and again on March 6, 1970, and that additional medical expenses in the sum of three thousand fifty-four dollars and thirty-three cents ($3,054.33) had occurred as a result of the recurrence of the original sickness. It is then alleged that after deducting five hundred dollars ($500.00), the insurance company *800 is indebted to the estate of the insured for seventy-five percent (75%) of the balance of two thousand five hundred fifty-four dollars and thirty-three cents ($2,554.33) or the sum of one thousand nine hundred fifteen dollars and seventy-five cents ($1,915.75).
The pertinent part of the insurance policy is in the following language:
"This coverage is effective December 27, 1957, attached to and forming a part of Policy ONE 27 67
The Company will pay the medical expenses specified herein, incurred by or on behalf of a Covered Person for the treatment of `such injuries' or `such sickness.'

 Schedule of Covered Persons
------------------------------------------------------
 Date of Relationship
Name Birth to Insured
------------------------------------------------------
J.B. Burns, Jr. 5-7-05 Self
Elise P. Burns 3-12-06 Wife
Ellen Elise Burns 12-12-40 Daughter
------------------------------------------------------
 Amounts of Insurance
Maximum Limit $7,500. Deductible Amount $ 500.

Benefits
The Company will pay 75% of the actual cost of `eligible expenses' in excess of the Deductible Amount and subject to the Maximum Limit stated above, which are incurred by a Covered Person as a result of any one accident and all conditions relating thereto, or any one sickness and all recurrences and conditions related thereto, provided:
(a) The Deductible Amount shall not be considered as having been exceeded unless and until `eligible expenses' have been incurred within a consecutive twelve month period which exceed the Deductible Amount shown above and unless this insurance is in force as respects such person on the first day of such period; and
(b) Such `eligible expenses' are incurred within two years immediately following the date the Deductible Amount has been exceeded; and... ."
The executor, appellee, contends that there is a difference between "coverage" and "benefits" and that the insured's "coverage" was taken from him in the "benefits" section of the policy and it is, therefore, ambiguous. It is also argued that under the terms of the policy the insurer agreed to pay 75% of all "eligible expenses" up to the sum of $7,500.00 incurred within a two-year period; that the two-year period under the terms of the policy began to run after $500.00 of expenses had occurred and was paid by the insured within one year; and that the one-year period, in which a new $500.00 deductible amount must be satisfied, began to run at the expiration of the two-year period. Therefore, it is said, the insurance company would be liable for a second 75% of eligible expenses for another two-year period up to $7,500.00, which included the last two heart episodes.
The appellee has cited authority for the proposition that where an insurance policy is ambiguous, or capable of two reasonable interpretations, the interpretation most favorable to the insured will be adopted. We agree with this long-established rule, but we cannot agree that the policy here involved is ambiguous.
The original bill filed in this case alleges that the insured "experienced a recurrence of said sickness, namely, myocardial infarctions, the last of which caused the death of J.B. Burns, Jr." Thus, it may be seen that the sickness here shown was not a new sickness, but was a continuation of (or recurrence of) the original sickness.
*801 The insurer agreed to pay 75% of the "eligible expenses" in excess of $500.00, which are incurred by the insured as a result of any one sickness "... and all recurrences and conditions related thereto, provided ... (b) Such `eligible expenses' are incurred within two years immediately following the date the Deductible Amount has been exceeded; ..."
The insurance company paid all that was due insured within the two-year period after the date the deductible amount had been exceeded for the first heart attack. Since the second and third heart attacks were recurrences of the first sickness and were outside the two-year limitation, these expenses were, therefore, excluded under the limited terms of the policy.
The policy here involved is not ambiguous and not susceptible to two interpretations and must be interpreted and enforced as written. Benton v. Canal Insurance Co., 241 Miss. 493, 130 So.2d 840 (1961); National Bankers Life Insurance Company v. Cabler, 229 Miss. 118, 90 So.2d 201 (1956); Brotherhood of Railroad Trainmen v. Bridges, 164 Miss. 356, 144 So. 554 (1932); Georgia Casualty Company v. Cotton Mills Products Company, 159 Miss. 396, 132 So. 73 (1931); Continental Casualty Company v. Hall, 118 Miss. 871, 80 So. 335 (1919).
The judgment of the Chancery Court is hereby reversed; the demurrer to the original bill is sustained; and the case is remanded to the trial court for such other and further proceedings as may be necessary or required in the Chancery Court.
Reversed and remanded.
PATTERSON, SMITH, ROBERTSON and SUGG, JJ., concur.